SARNI ORIGINAL DRY CLEANERS, INC. *vs.* RONNIE LEE COOKE
& another.[1]

Suffolk. December 10, 1982. — April 4, 1983.

Present: HENNESSEY, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Anti-Discrimination Law*, Prima facie case, Burden of proof, Bona fide
    occupational qualification, Driver.

A prima facie case of racial discrimination in violation of G. L. c. 151B,
    § 4, was established by evidence that the complainant, a black
    delivery truck driver, was discharged and replaced by a white driver
    about five days after a group of youths threw rocks at a delivery truck
    which the complainant was driving, and by the employer's admission
    that he would not have hired a black man to replace the complainant.
    [614-615]
In proceedings before the Massachusetts Commission Against Discrimina-
    tion by a black delivery truck driver, who had been discharged from
    his employment and replaced by a white driver, the employer's opin-
    ion that the discharge was necessary because the complainant's route
    was not safe for a black driver provided no justification for the dis-
    charge. [616-617]
In proceedings brought by a black delivery truck driver claiming racial
    discrimination in his discharge from employment, the employer failed
    to establish a bona fide occupational qualification under G. L.
    c. 151B, § 4, to justify the discharge by evidence that on one occasion
    about five days before the discharge a group of youths had thrown
    rocks at a delivery truck driven by the complainant and that some time
    after the incident certain persons at a gasoline station near the place
    where the incident had occurred told the complainant's employer that
    if the complainant came back there would be trouble. [617-618]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 5, 1980.

The case was heard by *Abrams*, J., on a motion for sum-
mary judgment.

[1] Massachusetts Commission Against Discrimination.

The Supreme Judicial Court granted a request for direct appellate review.

*Donald L. Conn* for the plaintiff.

*Brian Rogal* for Massachusetts Commission Against Discrimination.

*Barbara J. Rouse (Mark S. Swartz* with her) for Ronnie Lee Cooke.

HENNESSEY, C.J. On September 12, 1975, Ronnie Lee Cooke filed a complaint with the Massachusetts Commission Against Discrimination (commission) alleging that he had been terminated from his employment with Sarni Original Dry Cleaners, Inc.,[2] because of his race and color, in violation of G. L. c. 151B, § 4 (1).[3] A public hearing was held before a single member of the commission. The decision of the hearing Commissioner on October 25, 1978, found a violation of law on the part of Sarni Original Dry Cleaners, Inc., and ordered Sarni to reimburse Cooke for all lost wages since the termination, plus interest, minus all sums earned by Cooke since the termination.[4] Sarni appealed to the full commission, which affirmed the decision of the hearing Commissioner on February 15, 1980.

Thereafter, Sarni filed a complaint in the Superior Court seeking reversal of the decision of the commission on matters of law. The matter was argued before a Superior Court judge on a motion for summary judgment filed jointly by the commission and Cooke. On May 6, 1982, the judge issued a memorandum of decision and order allowing the motion for summary judgment, and a judgment affirming the decision of the commission. Sarni appealed, and this court

---

[2] Throughout this opinion we refer to "Sarni," and this in most instances refers to James Sarni, who is described by the commission as the owner of the company.

[3] See the statutory provision, *infra* at 617, in so far as it is pertinent to this case.

[4] The decision also awarded Cooke $1,000 for emotional distress, but the full commission found that the evidence did not warrant such an award, and it is not in issue in this appeal.

granted direct appellate review on the petition of the commission and Cooke. We affirm.

The facts as found by the hearing Commissioner are as follows. Sarni Original Dry Cleaners, Inc., is a Massachusetts corporation engaged in the dry cleaning business, having its principal place of business in Boston. Cooke, a black male, was employed by Sarni as a delivery truck driver from July to September, 1975. Sarni operated sixteen stores and three dry cleaning plants in the Boston area during the relevant period. As a normal part of his duties, Cooke made four deliveries a day to Sarni's store in South Boston. On one occasion early in September, 1975, during his third daily delivery to the South Boston store, a group of three or four youths, eight to ten years of age, threw rocks at the truck which Cooke was driving. There was no evidence that the truck or its contents were damaged, that the incident was racially motivated, or that the youths could see that the driver of the truck was black. The incident lasted only a few moments, did not interfere with Cooke's duties, did not injure him, and did not cause him to feel that he was in any danger.

Cooke reported the incident to Sarni upon returning to the plant. Cooke returned to the South Boston store once that afternoon, and four times each day for several days thereafter without further trouble. As a result of his personal observation during this period, Cooke believed that his job was in jeopardy. Three or four days after the incident, Cooke spoke to Sarni about switching routes with the driver of Sarni's other truck, or at least switching stores with the other driver. Cooke would then deliver to the Harbor Towers store instead of the South Boston store. Sarni denied both requests without explanation. During this period, a white man named Mark regularly drove Sarni's second truck. Since Mark's attendance was sporadic, Rubin McRae, a black man, filled in for him on the second truck on those days when Mark was absent. When not driving the truck, McRae performed different tasks inside the plant.

At some point following the stone-throwing incident, Sarni discussed the incident with certain persons at a gasoline

station in South Boston. An attendant there told Sarni that the incident had happened at the gasoline station, that the youths had attempted to tip the truck over, and that if Cooke came back there would be trouble. The actual incident took place more than a block away from the station. Sarni did not discuss the incident with Cooke. Approximately five days after the incident, Sarni offered Cooke one week's pay if he would resign. This offer was made after Sarni had denied Cooke's offer to switch either the routes or the stores on the routes. Cooke refused this offer and Sarni fired him. After Cooke's termination, a white man was hired to drive the route which included the South Boston store. Sarni admitted he would not have hired a black man to replace Cooke.

The Commissioner concluded that Cooke had established that he was the victim of overt racial discrimination by showing that a similarly-situated white driver would not have been fired.

In affirming the decision of the hearing Commissioner in all but one respect (the award for emotional distress), the full commission filed a twenty-four page decision in which it emphasized the importance of the case and described the issues as follows: "[U]nder what circumstances, and according to what standard of review [may] an employer . . . restrict or deny the employment opportunities of a person of one race, because of perceived safety problems posed by anticipated racial attacks[?]"

1. Judicial review of the decision of the commission is in accordance with the standards expressed in G. L. c. 30A, § 14, and G. L. c. 151B, § 6. Chapter 30A, § 14 (7) (e) (as appearing in St. 1973, c. 1114, § 3), implements, inter alia, the "substantial evidence" test as a measure of agency decisions.

The burden of proof as to the unlawfulness of the challenged act or practice must be carried by the employee. *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 137 (1976). The employee is assigned the threshold burden of establishing a prima facie

case, after which the burden of production shifts to the respondent to articulate a legitimate, nondiscriminatory reason for its action, and to "produce credible evidence to show that the reason or reasons advanced were the real reasons." *Id.* at 138. The burden of proving that the asserted nondiscriminatory reason was a pretext rests upon the employee. Thus, proof of a prima facie case establishes that, in the absence of other and lawful explanation, the challenged employment decision was based on impermissible and discriminatory factors in violation of G. L. c. 151B. See *Smith College* v. *Massachusetts Comm'n Against Discrimination,* 376 Mass. 221, 229 (1978); *Trustees of Forbes Library* v. *Labor Relations Comm'n,* 384 Mass. 559, 565 n.4 (1981).

Cooke has clearly established a prima facie case of racial discrimination. A member of a racial minority, he was qualified for, and worked successfully as, a delivery truck driver. He was discharged, and a white man was hired to drive his route. Sarni has, in fact, admitted that it would not have hired a black man to replace Cooke. The commission accepted Sarni's stated reason (safety considerations) as real, and not a pretext. However, we disagree with Sarni's characterization of that reason as nondiscriminatory. Rather, we agree with the commission's conclusion and reasoning: "While [Sarni] argues that his reason was concern for the safety of the truck and driver, this safety concern was a general management objective, not a reason for the specific action in this case. In attempting to achieve that management objective, Sarni used a criterion for determining what type of driver was likely to be safe or unsafe. That criterion was the 'determinative cause,' *Smith College* [*supra* at 226], and was admittedly and exclusively racial. Unlike possible nondiscriminatory reasons (such as poor driving record, excessive absenteeism), Sarni's decisional criterion was facially improper. His reason was necessarily linked to [c]omplainant's race" (footnote omitted).

In similar cases, the employer's neutral reason, although genuine and not a pretext, was held to be discriminatory

where the reason was directly linked to a protected classification. In *Los Angeles Dep't of Water & Power* v. *Manhart,* 435 U.S. 702 (1978), female employees were required to pay more than was required of male employees into a pension fund. This requirement was based on actuarial studies showing a longer life expectancy for women. Because gender had been used in computing longevity, the Court rejected this justification and found the distinction to be based squarely on gender. In *Kober* v. *Westinghouse Elec. Corp.,* 480 F.2d 240 (3d Cir. 1973), where a female employee was refused promotion to a job that would have required her to work longer hours than State law permitted females to work, the court held that the employer's allegedly neutral reason for its action was shown to be linked directly to a protected classification, and hence, was intentionally discriminatory. *Dothard* v. *Rawlinson,* 433 U.S. 321 (1977), applied comparable reasoning, although it held in favor of the employer, based upon a "bona fide occupational qualification" exception, a concept discussed later in this opinion.

Sarni's argument, that it did not intend to discriminate, fails. It is true that the parties and the commission have treated this case as one of "disparate treatment," rather than "disparate impact," and in disparate treatment cases proof of discriminatory intent (motive) is critical. *Smith College, supra* at 227. Here, however, the commission has justifiably found that a prima facie case of overt discrimination has been established and no neutral reason has been offered, much less proved. Cf. *Trustees of Forbes Library* v. *Labor Relations Comm'n, supra* at 565 n.4. In such a case, intent is material only to show that the employer's actions were deliberate, rather than accidental.[5] In the instant case, it is shown that Sarni intentionally acted because of Cooke's race.

_____

[5] Nor, contrary to Sarni's argument, must it be proved in such a case that the employer acted with racial hostility or animosity. No such attitude on Sarni's part was established, or even alleged, in this case. Indeed, it was shown that Sarni employs a relatively high percentage of black persons.

2.  We turn now to the issue whether the commission was in error in deciding that Sarni had not established a defense of "bona fide occupational qualification" (BFOQ). Clearly such a defense is available to an employer charged with racial discrimination. General Laws c. 151B, § 4 (1), inserted by St. 1946, c. 368, § 4, states in relevant part: "It shall be an unlawful employment practice . . . because of the race, color, religious creed, national origin, age, sex, or ancestry of any individual, to refuse to hire or employ or to bar or to discharge . . . such individual . . . unless based upon a bona fide occupational qualification."

The commission opined, we think correctly, in its decision that the BFOQ exception is to be narrowly applied. See *Dothard* v. *Rawlinson*, 433 U.S. 321, 334 (1977). To qualify for this narrow exception an employer must show that "the essence of the business operation would be undermined by not hiring members of one [race] exclusively" (emphasis omitted), *Diaz* v. *Pan American World Airways*, 442 F.2d 385, 388 (5th Cir.), cert. denied, 404 U.S. 950 (1971).

The commission expressed doubt, but did not decide, whether external factors, such as the prejudices of third parties, could legitimize a BFOQ.[6] Cf. *Diaz* v. *Pan American World Airways, supra* at 389, ("[I]t would be totally anomalous . . . to allow . . . these very prejudices the Act was meant to overcome [to justify discriminatory practices]"); *American Jewish Congress* v. *Carter*, 9 N.Y. 2d 223 (1961). We need not consider that issue, because we think the commission's conclusion that Sarni did not prove a BFOQ was warranted.

A BFOQ is an affirmative defense. The burden of proving the defense is on the employer. The standard is an objective one, and the subjective opinions of the employer, however sincere, are irrelevant if not shown, objectively, to be reasonable. In order to invoke the BFOQ successfully,

---

[6] The commission noted that commentators have used the example of the casting of actors for dramatic parts (e.g., a black actor to play Paul Robeson, or a white actor to play Robert E. Lee) to describe a valid BFOQ.

the employer must show that it has "a *factual* basis for believing that all or substantially all [members of the excluded category] would be unable to perform safely and efficiently the duties of the job involved" (emphasis added). *Weeks* v. *Southern Bell Tel. & Tel. Co.*, 408 F.2d 228, 235 (5th Cir. 1969). This factual basis must be based upon objective evidence and not on "subjective doubts, which may themselves be based upon impermissible stereotypes." *Long* v. *Sapp*, 502 F.2d 34, 40 (5th Cir. 1974).

As to the likelihood of damage to Sarni's property or personal injury to Cooke,[7] Sarni failed in its burden. We think that the commission's analysis was fair and complete: "Apart from his own conclusory opinion, Sarni's only evidence on this issue was a hearsay conversation with some gasoline station employees who witnessed the incident from one block away. In contrast, as the [h]earing Commissioner found, there was no damage from the single incident, and the [c]omplainant drove the route four times a day for several days after the incident, without further trouble. We find that the [h]earing Commissioner's implicit adverse findings on this point [are] supported by substantial evidence. The record is clear that Sarni did not prove his defense."

We discern no error of law in the commission's decision, and we conclude that the decision is supported by substantial evidence.

*Judgment affirmed.*

---

[7] The commission expressed its doubts whether racial attacks by third parties would ever serve to legitimize a BFOQ, stating that "to allow such flagrant criminality to serve as the justification for a racial termination . . . would reward and encourage the very lawlessness and racism which it is the purpose of Chapter 151B to eliminate."