LYNN TEACHERS UNION, LOCAL 1037, AFT, AFL-CIO, *vs.*
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION.

Essex. September 11, 1989. - January 22, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Employment*, Discrimination. *Massachusetts Commission Against Discrimination. Anti-Discrimination Law*, Employee, Sex, Maternity leave, Prima facie case, Burden of proof. *Statute*, Construction.

The Massachusetts Commission Against Discrimination correctly found a "continuing violation" of G. L. c. 151B, § 4 (1), in a union's failure to credit two female employees with seniority under its seniority system's requirement of consecutive years of service because of the employees' interruption of service (involuntarily) due to an unlawful maternity leave policy, with the result that the six-month filing limitation of G. L. c. 151B, § 5, did not apply. [520-523]

The Massachusetts Commission Against Discrimination correctly determined that the exemption embodied in G. L. c. 151B, § 4 (17) (*a*), referring specifically to age discrimination, did not apply to cases of sex discrimination. [523-525] LYNCH, J., with whom O'CONNOR, J., joined, dissenting.

Complainants before a commissioner of the Massachusetts Commission Against Discrimination established a prima facie case that a certain union seniority system unlawfully discriminated against them, where they demonstrated that they were denied seniority credit as the result of being unlawfully forced to resign their employment on account of pregnancy. [526-527] GREANEY, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on October 28, 1985.

The case was heard by *John T. Ronan*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Deborah L. McCutcheon* for the plaintiff.

*Jean A. Musiker* for Massachusetts Commission Against Discrimination.

LIACOS, C.J. The plaintiff, Lynn Teachers Union, Local 1037 (union), appeals from the judgment entered in the Superior Court affirming the decision of the Massachusetts Commission Against Discrimination (commission). The commission had upheld the decision of a hearing commissioner (commissioner); the commissioner had ruled that the union had engaged in illegal sex discrimination in violation of G. L. c. 151B, § 4 (1) (1988 ed.). The case arose out of claims by two teachers that they had been discriminated against by the school committee of Lynn (school committee) which refused to grant them preresignation credit for seniority purposes. The teachers had been forced to resign due to pregnancy.

The union challenges the judge's decision, claiming that the original complaint filed with the commission was barred by the six-month filing limitation of G. L. c. 151B, § 5 (1988 ed.), and that the commission's decision that the claim was a "continuing" violation under 804 Code Mass. Regs. § 1.03(2) (1986), exempt from the statutory bar, was erroneous as matter of law. The union also argues that its bona fide, facially neutral seniority system is protected by G. L. c. 151B, § 4 (17) (a), from claims of sex discrimination, and that the commission erred in granting the two complainants relief from the neutral application of the system. Finally, the union claims that the commission should have dismissed the original complaint because the complainants failed to make out a prima facie case of employment discrimination.

We agree with the judge's decision that the commission's findings of fact are supported by the evidence and that its determination that the situation presented a continuing violation was not erroneous as matter of law. We affirm. We summarize the facts as found by the hearing commissioner.[1]

---

[1]Upon appeal, the full commission is required to review the record which was before the hearing commissioner. G. L. c. 151, § 3 (1988 ed.). According to the commission's rules of procedure, the commission should accept the facts found by the hearing commissioner unless they are "[u]nsupported by substantial evidence." 804 Code Mass. Regs. § 1.16(8)

Early in 1962, Joyce Angelli, a tenured teacher in the Lynn school system, learned that she was pregnant and that her child would be born around December, 1962. At that time, the rules of the school committee required that teachers who became pregnant apply for a maternity leave of absence without pay. A pregnant teacher who was granted leave had to leave employment at least four months prior to the expected date of delivery and could not return any time earlier than seven months after the birth of the child. Teachers could return from maternity leave only at the beginning of the school year, and those teachers failing to return within two years were treated as having resigned. Only tenured teachers were eligible for maternity leave; nontenured teachers who became pregnant were forced to resign.

Angelli applied for, and was granted, a maternity leave for the 1962-1963 school year. Her first child was born on December 31, 1962, and her second child was born in August, 1964. Under the rules of the school committee, Angelli could not return to work at the beginning of the 1964-1965 school year in September. Because Angelli had not returned from her maternity leave within two years, the school committee treated her as having resigned her position, effective September, 1964. Angelli took a part-time teaching position in the Lynn school system in April, 1976, returning to full-time teaching duties in September, 1977.

During the summer of 1970, Carol Griffin learned that she was pregnant and would deliver in early 1971. Griffin had been employed as a teacher in the Lynn public schools since September, 1968. Because Griffin was not a tenured teacher, she was not entitled to maternity leave and was forced to

---

(1986). Similarly, G. L. c. 30A, § 14 (7) (*e*) (1988 ed.), requires that a court reviewing a decision of the commission accept the factual findings of the commission unless they are "[u]nsupported by substantial evidence." *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 401 Mass. 566 (1988). *Sarni Original Dry Cleaners, Inc.* v. *Cooke*, 388 Mass. 611 (1983). "Substantial evidence" has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1988 ed.). *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357 (1974).

resign in November, 1970, due to her pregnancy. Griffin began working part time at the Lynn English High School in November, 1974, eventually returning to a regular full-time teaching position with the Lynn school system in September, 1978.

The plaintiff union was certified in November, 1966, as the exclusive collective bargaining agent for all classroom teachers in Lynn. A collective bargaining agreement between the school committee and the union governed the terms and conditions of employment for Angelli and Griffin, both of whom were union members.[2] At all times material to this case, the collective bargaining agreement provided that seniority of employees would be computed according to the number of *consecutive years of experience* in the Lynn School Department" (emphasis added). Because the maternity policy had forced Angelli and Griffin to leave their jobs, their total years of employment within the Lynn school system were not consecutive. Thus, the seniority system embodied in the collective bargaining agreement did not credit either Angelli or Griffin for those years of employment preceding pregnancy and subsequent resignation.

In June, 1980, Griffin began to inquire about obtaining seniority credit for her preresignation employment. Her efforts at that time were unsuccessful. In November, 1980, the Massachusetts electorate voted to implement Proposition 2½. St. 1980, c. 580. Anticipating a layoff of teaching personnel due to Proposition 2½, the union requested that the school committee delineate each teacher's seniority.

On March 4, 1981, both Angelli and Griffin (complainants) filed a "charge of discrimination" with the commission against the school committee for its failure to credit the complainants for their service prior to the forced resignations. It was not until March 18, 1981, when the school committee distributed the seniority list which the union had requested,

---

[2] The collective bargaining agreement between the school committee and the union at the time of Griffin's pregnancy incorporated the same maternity leave policy which had mandated Angelli's resignation in 1964 and Griffin's resignation in 1970.

406 Mass. 515                                                    519

Lynn Teachers Union, Local 1037 *v*. Massachusetts Commission Against Discrimination.

that the complainants formally learned that the committee would not credit their prior service.[3]

In August, 1982, the school committee voted to grant Griffin and Angelli seniority credit for their preresignation service. The union, however, grieved the committee's decision as a violation of the collective bargaining agreement. An arbitrator upheld the grievance, and, as a result, both teachers were sent a termination notice. Griffin and Angelli filed amended complaints in November, 1982, naming the union as well as the school committee as respondents.

On February 21, 1985, the hearing commissioner issued her decision finding that the union had discriminated against the complainants on the basis of their sex in violation of G. L. c. 151B, § 4.[4] The union was ordered to credit the complainants for their preresignation seniority and to pay Griffin $1,000 plus interest to compensate for her emotional distress. The union appealed the decision to the full commission which upheld the hearing commissioner's decision on September 25, 1985. Pursuant to G. L. c. 30A, § 14 (1), the union applied for judicial review of the commission's decision. On July 5, 1988, a judge of the Superior Court affirmed the decision of the commission. The union appealed the decision of the Superior Court.

---

[3]The union claims that the commission's findings that Angelli and Griffin did not formally learn of their seniority status until March 18, 1981, is not supported by substantial evidence. The union points to the filing of the discrimination charges on March 4, 1981, and the testimony of both Angelli and Griffin that they knew they were treated as "new" employees when they returned to work in the Lynn school system. The hearing commissioner specifically rejected the union's claim, characterizing the evidence offered by the union as indicating uncertainty on the part of the complainants as to their seniority status and citing her observation of the witnesses' demeanor during testimony. Under the standards of review outlined in note 1, *supra*, we decline to overturn the hearing commissioner's finding. See *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 170 (1987).

[4]The hearing commissioner also ruled that the school committee had discriminated against the complainants. The school committee did not appeal this decision to the full commission. Therefore, the present case before this court involves only the union's appeal from the commissioner's decision.

1. *G. L. c. 151B, § 4 (1), and the application of the continuing violation rule.* General Laws c. 151B, § 4 (1), prohibits discrimination in the "terms, conditions or privileges of employment" on the basis of an employee's sex.[5] Any person who feels that his or her rights under G. L. c. 151B, § 4 (1), have been violated may file a complaint with the commission, which has the power to hold hearings and render judgments regarding claims of unlawful discrimination. G. L. c. 151B, § 3 (1) - (13). Ordinarily, a complaint of unlawful discrimination must be filed with the commission within six months of the alleged act of discrimination. G. L. c. 151B, § 5. However, this six-month limitation will not be applied where "the unlawful conduct complained of is of a continuing nature." 804 Code Mass. Regs. § 1.03(2). Where there is a determination of a continuing violation, a complaint is timely filed even though the discriminatory action commenced more than six months prior to the challenge. See *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 207-208 (1981). The purpose of this "continuing violation" rule is to permit the commission to "remedy ongoing discriminatory policies by an employer." *Id.* at 207.

In the present case, the commission decided that the union's failure to credit the complainants for their pre-resignation seniority was a continuing violation, thereby releasing the complainants from the six-month filing limitation of G. L. c. 151B, § 5. The union challenges this decision, claiming that the only discriminatory acts occurred in 1964 and 1970, when the maternity leave policy dictated the resignation of the complainants.[6] Such acts, the union argues, are

[5]General Laws c. 151B, § 4 (1), provides: "It shall be an unlawful practice: 1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

[6]The union properly has conceded that the maternity leave policy responsible for the complainants' resignations was illegal. This court declared a similar policy unconstitutional under the due process clause of the

too remote to meet the filing requirements of G. L. c. 151B, § 4.

The commission found a continuing violation of G. L. c. 151B, § 4 (1), in the failure of the union to credit the complainants with their preresignation seniority under the seniority system's requirement of consecutive years of service. The commission reasoned that, because the number of the complainants' consecutive years of service had been reduced by an illegal maternity leave policy, the seniority system gave effect to that discriminatory policy by failing to credit the complainants for their preresignation service. According to the commission, the complainants underwent a new act of illegal discrimination each day that their status on the seniority list remained lower than it would have been but for the illegal maternity leave policy. Thus, under this analysis, the union's refusal to credit the complainants with their preresignation seniority was a daily, continuing violation of G. L. c. 151B, § 4 (1).

The union claims that the application of a facially neutral seniority system cannot be considered a discriminatory act for the purposes of the continuing violation rule, even though it gives present effect to a past act of discrimination. The union points to the decision in *United Air Lines, Inc.* v. *Evans*, 431 U.S. 553 (1977), in support of its contention.[7] We find its arguments unpersuasive.

Fourteenth Amendment to the United States Constitution in *Black* v. *School Comm. of Malden*, 365 Mass. 197 (1974). In *Black*, this court declared that such a restrictive policy " '[penalizes a] pregnant teacher for deciding to bear a child,' [thereby putting] a heavy burden on the 'freedom of personal choice in matters of marriage and family life [that] is one of the liberties protected by the Due Process Clause.' " *Id.* at 206, quoting *Cleveland Bd. of Educ.* v. *LaFleur*, 414 U.S. 632, 639-640 (1974). It is clear that such a policy violates G. L. c. 151B, § 4 (1). See 804 Code Mass. Regs. § 8.01(3). See also *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424 (1979) (sick leave policy denying benefits to pregnancy-related disabilities violative of G. L. c. 151B, § 4, as unlawful discrimination).

[7] *Evans* considered a charge of a continuing violation brought under Title VII of the Civil Rights Act of 1964, involving the allegedly discriminatory application of a seniority system to an employee who had been forced to

While the union is correct in pointing out that the seniority system is facially neutral and does not explicitly adopt the discriminatory rule contained within the original maternity leave policy, the union ignores the fact that the seniority system credits the complainants with fewer years of employment than they have served *solely* because they became pregnant during their employment and were forced to resign.

The union argues that the seniority system does not treat the complainants any differently than "any other employee, male or female, who returned to teaching after several years absence, whether the initial separation was voluntary or involuntary." But the union has failed to consider the more telling issue whether the seniority system discerns between "initial separations" which are legal and those which are illegal. We are not concerned with the seniority system's responsiveness to the desires of those teachers who leave their jobs voluntarily; rather, we are concerned with the seniority system's responsiveness to the rights of those teachers who are forced to leave. A seniority system which is so "facially neutral" that it ignores prior discriminatory acts against its members, to the detriment of those members, presents a ready vehicle for application of the continuing violation rule.

In *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 207 (1981), we described the purpose of the continuing violation rule as "[permitting the commission] to remedy ongoing discriminatory policies." In the present case, that purpose is met by the commission's application of the continuing violation rule. The union's refusal to credit the complainants' preresignation seniority springs directly

resign because of her marriage. *United Airlines, Inc.* v. *Evans*, 431 U.S. 553 (1977). While this court may consider analogous Federal statutes for purposes of interpretation, we "are not . . . bound by interpretations of the Federal statute in construing our own State statute." *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 163 (1987). *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 167 (1978). Because we view the *Evans* decision as unduly restrictive of an administrative agency's ability to punish discriminatory acts, for the reasons stated *infra*, we decline to follow its reasoning regarding continuing violations.

from the discriminatory maternity leave policy. Had the union been willing to alter its seniority system to disregard breaks in service caused by illegal acts, the effects of the maternity leave policy would have gradually disappeared. Instead, the union's refusal to credit the complainants for their preresignation seniority breathes new life into a concededly illegal policy. Given the union's knowledge that the complainants were illegally forced to resign, the refusal to credit the complainants constituted a discriminatory act in violation of G. L. c. 151B, § 4. We agree with the Court of Appeals of New York, which, on similar facts, concluded that a continuing violation existed and stated that such a seniority system "imposes a distinct burden on a woman who became pregnant during service, *effectively penalizing her again for her prior pregnancy*" (emphasis added). *Board of Educ. of Farmingdale Union School Dist.* v. *State Div. of Human Rights*, 56 N.Y.2d 257, 261-262 (1982).

The commission has been charged with the task of combating discrimination in the Commonwealth and, pursuant to its statutory powers, has developed the continuing violation rule to assist in carrying out its legislative mandate. To limit the continuing violation rule to the interpretation proposed by the union would be to strip the rule of its vitality, while allowing the dead hand of past discrimination to reach out to revisit illegal discrimination upon its past victims again and anew. To this we cannot agree.

2. *The seniority system and application of G. L. c. 151B, § 4 (17) (a).* General Laws c. 151B, § 4 (17) (a), provides: "Notwithstanding any provision of this chapter, it shall not be an unlawful employment practice for any person, employer, labor organization or employment agency to: . . . observe the terms of a bona fide seniority system . . . which is not a subterfuge to evade the purposes of this section, except that no such seniority system . . . shall require or permit the involuntary retirement of any person *because of age except as permitted by paragraph (b)*" (emphasis supplied). The union claims that G. L. c. 151B, § 4 (17) (a), releases its bona fide seniority system from the requirements of

G. L. c. 151B, § 4, and that the commission erred in deciding that the statutory exemption did not apply to cases of sexual discrimination.

The union presented this same argument to both the commissioner and the commission, and in each instance it was rejected. As we review the validity of the commission's decision, we keep in mind that "[a]n agency's interpretation of a statute, under which it is vested with broad authority to effectuate the purposes thereof, is entitled to great weight." *Polednak* v. *Rent Control Board of Cambridge*, 397 Mass. 854, 858 (1986). Therefore, the commission's determination that the statutory exemption did not apply in the present situation is not to be disregarded lightly.

The commissioner noted that § 4 (17) (*a*) was inserted in G. L. c. 151B, § 4, by St. 1984, c. 266. Chapter 266 is entitled, "An Act relative to the dismissal of certain persons from employment or the refusal to employ such persons due to age." Chapter 266 consists of seven sections, each of which amends various chapters of the General Laws regarding their treatment of "age" in the employment context.

This court has recognized that, "[w]hile the title to an act cannot control the provisions of the statute, the title may be used for the purpose of ascertaining its proper limitations." *Commonwealth* v. *Graham*, 388 Mass. 115, 120 (1983). *American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474 (1983). Similarly, we have held that, in interpreting a statute this court may consider "the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 488 (1984), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975).

The title and provisions of c. 266 make clear the intent of the Legislature to focus exclusively on the problem of age discrimination in the workplace. General Laws c. 151B addresses issues of discrimination on the basis of race, color, religious creed, national origin, age, sex, or ancestry. However, c. 266 refers explicitly only to age discrimination in its

amendment to c. 151B, to the exclusion of all other forms of discrimination encompassed by c. 151B. Had the Legislature intended to affect the statutory treatment of other forms of discrimination, it would have made some reference to these other types of discrimination in either the title or the provisions of c. 266. *Brady* v. *Brady*, 380 Mass. 480 (1980).[8]

We agree with the commissioner that, by its addition of paragraph (17) (*a*) to G. L. c. 151B, § 4, the Legislature did not intend to screen bona fide seniority systems from the scrutiny of all of the Commonwealth's antidiscrimination laws. Because the present case involves a case of discrimination on the basis of sex, the provisions of G. L. c. 151B, § 4 (17) (*a*), do not apply.[9]

---

[8]By comparison, the language of § 703(h) of Title VII, 42 U.S.C. § 2000e-2h (1982), which has been held to provide an exemption for bona fide seniority systems from the application of Federal laws prohibiting varied types of discrimination, specifically refers to "an intention to discriminate because of race, color, religion, sex, or national origin. "

[9]The dissent points to our "[refusal] to follow Federal precedents construing parallel provisions of Federal law," and argues that we should adopt the interpretation ascribed by Federal courts to language in Title VII similar to that in § 4 (17). However, this argument fails to recognize that "Title VII and the decisions construing it are not determinative of the questions presented in this case; rather the issue presented is purely one of the interpretation of a Massachusetts statute." *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination, supra* at 167. Even if we were to look to the Federal system for guidance, we would encounter conflicting signals. While § 4 (17) is similar to § 703(h) of Title VII, c. 14, § 623(f)(2) of Title XXIX contains language virtually identical to that used in § 4 (17) (*a*). 29 U.S.C. § 623(f)(2). Congress passed c. 14 for the sole and specific purpose of addressing age discrimination in employment. 29 U.S.C. § 621(b). Therefore, it is unclear whether we should look to Title VII or Title XXIX for illumination. We choose to look to neither.

The dissent also states that our interpretation of § 4 (17) will render the seniority system exemption "practically meaningless." This conclusion rests upon the rather dubious assumption that seniority systems, by their very nature, protect older workers and therefore do not need protection from age discrimination claims. The dissent fails to recognize the realities of the modern workplace, in which it is quite common for workers to enter new jobs in the latter stages of their lives. See Carey, Occupational Tenure in 1987, Monthly Labor Review 4 (Oct. 1988) (10.5% of workers aged fifty to fifty-four have tenure of less than six to nine years). These older workers will receive less protection from a seniority system than is anticipated by the dissent, and will owe less allegiance to the system. The Legis-

3. *Prima facie case of employment discrimination.* The union claims that the complainants failed to establish a prima facie case of employment discrimination, and therefore the commission erred in not dismissing the complaints. We disagree. When an employment act or practice is challenged as discriminatory, the burden of proof as to the unlawfulness of the act or practice falls on the challenging party. *Sarni Original Dry Cleaners, Inc.* v. *Cooke,* 388 Mass. 611, 614-615 (1983). "[P]roof of a prima facie case establishes that, in the absence of other and lawful explanation, the challenged employment decision was based on impermissible and discriminatory factors in violation of G. L. c. 151B." *Id.* at 615.

A prima facie case of employment discrimination can be based on a theory of disparate impact or disparate treatment.[10] *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination,* 377 Mass. 424, 428 (1979). The complainants chose to present the matter to the hearing commissioner as one of disparate treatment. A prima facie case of disparate treatment requires that the challenging party make a showing that he or she was discriminated against in employment on the basis of illegal considerations. *Id.* In addition, the challenging party must prove discriminatory intent or motive. *Smith College* v. *Massachusetts Comm'n Against Discrimination,* 376 Mass. 221, 227 (1978).

---

lature recognized that length of seniority does not necessarily equate with chronological age, and that older workers will not always receive better treatment under a seniority system. Section 4 (17) is a reflection of that recognition, and is designed to protect seniority systems from the appearance of age discrimination inherent in a situation where a younger worker receives benefits at the expense of an older worker.

[10]"[Disparate impact] cases involve employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another." *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination,* 377 Mass. 424, 429 (1979). Disparate treatment cases generally involve situations where an employer "purposefully uses race, color, religion, sex, or national origin as the determinative factor in employment decisions." *Id.* at 428.

406 Mass. 515                                          527

Lynn Teachers Union, Local 1037 *v.* Massachusetts Commission Against Discrimination.

In the present case, complainants made a showing that the seniority system in question placed a unique burden on female employees who were unlawfully forced to resign due to their pregnancies. The hearing commissioner agreed with the complainants that the seniority system discriminated against the complainants because of their sex in violation of G. L. c. 151B, § 4 (1). This presented the commission with a showing sufficient to meet the prima facie requirement of discrimination based on illegal considerations. The prima facie requirement of proof of intent may be met by a "show[ing] that the employer's actions were deliberate, rather than accidental." *Sarni Original Dry Cleaners, Inc.* v. *Cooke,* 388 Mass. 611, 616 (1983). In addition, discriminatory intent "may be inferred from the mere fact of differences in treatment." *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination, supra* at 429. The commission had before it the findings of the hearing commissioner which made clear the fact that the union was well aware that the seniority system denied the complainants their preresignation seniority because they had been forced illegally to resign. In light of this evidence, we cannot say that the commission erred as matter of law in failing to dismiss the complaints for lack of a prima facie case.

Based on our review of the entire record, we discern no error of law in the commission's decision; we conclude that the decision is supported by substantial evidence. Accordingly, the judgment of the Superior Court affirming the decision of the commission contains no error.

*Judgment affirmed.*

GREANEY, J. (concurring). I join in the result but think the more proper inquiry might be whether the aspect of the seniority system under consideration is "bona fide." The exception contained in G. L. c. 151B, § 4 (17) (*a*), protects only a "bona fide seniority system" from scrutiny under the provisions of G. L. c. 151B, which prohibits discrimination be-

cause of sex. A bona fide seniority system would appear to mean, at the very least, a system that does not systematically "evade the purposes of [the statute]." G. L. c. 151B, § 4 (17) (*a*). But the provisions of the plaintiff's collective bargaining agreement, incorporating the school committee's express policy, manifest a discriminatory intent, cf. *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 429 (1979) (discriminatory intent "may be inferred from the mere fact of differences in treatment"), selectively burdening those members of the community who bear children, by requiring women, in the first instance, to take a leave of absence from their jobs, and then, in the second instance, to return to those jobs with considerably diminished status. If a systematic evasion of the purposes of G. L. c. 151B exists, the seniority system cannot be bona fide.

LYNCH, J. (dissenting, with whom O'Connor, J., joins). I cannot agree that the seniority system exception contained in G. L. c. 151B, § 4 (17), is so limited that it only protects seniority systems from attacks based upon age discrimination.

General Laws c. 151B contains a comprehensive legislative scheme prohibiting unlawful discrimination. Section 4 (2) makes it unlawful for a labor organization to discriminate against any of its members "because of race, color, religious creed, national origin, sex, age, ancestry . . . or handicap." The seniority system exception contained in paragraph (17) of that section states, in pertinent part, that

> "[n]otwithstanding any provisions of this *chapter*, it shall not be an unlawful employment practice for any . . . labor organization . . . to observe the terms of a bona fide seniority system" (emphasis supplied).

The court reads this exception out of the statute by discerning a legislative purpose from the title to the Act adopting

406 Mass. 515                                    529

Lynn Teachers Union, Local 1037 *v.* Massachusetts Commission Against Discrimination.

the exception. In so doing the court ignores the plain meaning of the statute, strains logic, violates long-standing rules of statutory construction, misapprehends the legislative process, and refuses to follow Federal precedents construing parallel provisions of Federal law.

The starting point of my analysis is the language of the statute itself, "the principal source of insight into legislative purpose." *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985), quoting *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984). It is, of course, axiomatic that in interpreting a statute we give meaning to each of its provisions. See *Manning* v. *Boston Redevelopment Auth.*, 400 Mass. 444, 453 (1987); *Casa Loma, Inc.* v. *Alcoholic Beverages Control Comm'n*, 377 Mass. 231, 234 (1979). It seems to me that not only does the court fail to apply the plain meaning of the statute, but eliminates the word "chapter" from its interpretation, in effect giving the word no meaning at all. Chapter 151B prohibits unlawful discrimination. The same section of c. 151B (§ 4), that regulates the conduct of labor organizations in this regard, provides an exception for bona fide seniority systems from any of the provisions of the chapter. In other words, seniority systems are exempt from the comprehensive legislative scheme prohibiting unlawful discrimination. There is no ambiguity. Even if one were to suggest that the word "chapter" should be read as meaning section, the result does not change. That reading would mean the seniority systems are exempt from the antidiscrimination laws that apply to labor organizations. The court is able to discern a legislative purpose contrary to the statute's plain meaning by ascribing talismanic powers to the title to the act adopting the exception. Not only does this ascribe an unheard of significance to the Act's title, but it is neither compelled by logic nor consistent with the realities of the legislative process. The court pays lip service to the traditional rule of statutory construction, but ignores its application. The traditional rule is that a title to an Act cannot control the plain provisions of a statute although it may be a guide to resolving an ambiguity in the legislation. *Breault* v. *Ford*

*Motor Co.*, 364 Mass. 352, 353-354 n.2 (1973). Here the court looks to the title to find the ambiguity. Thus the title controls the statutory language. Such a construction stands the rule on its head.

Furthermore, there is no inconsistency between the Act's title and the broad reading of the exception required by its plain meaning. If the court is correct in concluding that the "intent of the Legislature [was] to focus exclusively on the problem of age discrimination in the workplace," *ante* at 524, then insulating a bona fide seniority clause from attack based upon all forms of discrimination is consistent with this purpose. This is so because by definition seniority clauses protect the oldest workers in terms of service. This almost always equates with chronological age, and thus the application of seniority clauses according to their terms, protects older workers and reduces the opportunities for discrimination against a worker because of age. For the same reason limiting the exception to age discrimination is to so narrow its application as to make it practically meaningless. Since, as I have pointed out, the natural tendency of the seniority clause is to protect older workers, there is no need that such clauses be insulated from attack based on age discrimination.

In addition, the court's interpretation of the statute is contrary to the one Federal courts have given the parallel provision of Title VII, the Federal law proscribing employment discrimination. Section 703(h) of Title VII, 42 U.S.C. § 2000e-2(h) (1982), provides, in pertinent part:

> "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system . . . provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin . . . ."

The language of c. 151B, § 4 (17), closely echoes this Federal wording. The fact that the Federal version spells out the grounds for discrimination actions created by Title VII — race, color, religion, sex, national origin — from whose attack bona fide seniority systems are shielded, and c. 151B, § 4 (17), uses the shorthand "chapter" — which, of course, creates actions for discrimination on the basis of race, color, religious creed, national origin, sex, age, ancestry or handicap — gives rise to no practical distinction. Therefore, in construing the later Massachusetts statutory provision, for which there is a prior existing Federal analog, "we are ordinarily guided by the construction given the parallel Federal statute by the Federal courts." *Howard* v. *Burlington*, 399 Mass. 585, 589 (1987).

The United States Supreme Court has construed § 703(h) to "make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII," *International Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 352 (1977), and to "defin[e] what is and what is not an illegal discriminatory practice in instances in which the post-Act operation of a seniority system is challenged as perpetuating the effects" of pre-Title VII discrimination. *Franks* v. *Bowman Transp. Co.*, 424 U.S. 747, 761 (1976). The Title VII bona fide seniority system exemption has since been frequently invoked in diverse contexts, including actions charging discrimination on the basis of race (see *International Bhd. of Teamsters* v. *United States, supra*; *Franks* v. *Bowman Transp. Co., supra*; sex (see *United Air Lines, Inc.* v. *Evans*, 431 U.S. 553 [1977]; *Lorance* v. *A T & T Technologies*, 109 S. Ct. 2261 [1989]) and national origin (see *Delaware State College* v. *Ricks*, 449 U.S. 250 [1980]). Since there is no essential difference between the wording of the bona fide seniority system provisions of the Federal statute and c. 151B, the latter ought to be similarly construed.

Finally, by exalting the Act's title as it does, the court ignores the reality of the legislative process. The legislative history of c. 266 demonstrates that it is an amalgam of fourteen separate bills forged by the Committee on Commerce and

Labor into a new Act which emerged from the committee with a title fairly descriptive of the general subject matter of the individual bills referred to the committee. There is nothing to suggest that the committee intended the title to be anything more than a generic description of the subject matter of the Act it was recommending. Certainly nothing suggests an intent to limit the plain meaning of words contained in the Act.

The error of this interpretation, it seems to me, is compounded when one takes into account the Massachusetts Legislature's practices in relation to titles to Acts. Titles are altered throughout the legislative process, often by nonlegislators, frequently even after adoption.

Because I would apply the seniority clause exception, I would not reach the other issues discussed by the court.