Agnes, A.J.
This is an age discrimination case in which the plaintiff, Heidi Gilliam, alleges that the defendant, Arthur D. Little, Co. (“ADL”), violated her rights under the Massachusetts Fair Employment Practices Act, G.L.c. 15 IB, §4(1B) by discharging her from her employment on account of her age. The defendants have filed a motion to dismiss under Mass.R.Civ.P. 12(b)(6). The central question presented by the defendants’ Motion to Dismiss is whether the plaintiffs claim is barred by the three-year statute of limitations that is applicable in such cases under G.L.c. 151B, §9.
BACKGROUND
The following facts are drawn from the plaintiffs complaint. The plaintiff, who is fifty-five years of age, began working for ADL as a secretary in 1977. Over the years, she received regular merit raises and promotions. She alleges that in 1996, ADL engaged in a pattern of age-based discriminatory discharges of female employees over the age of forty years. In her case, she alleges that in December 1996, an ADL employee, defendant Pam McNamara, falsely reported to another ADL employee, defendant Marcia Fanucci, that the plaintiff was not observing a consistent work schedule. The plaintiff alleges that, as a result of the defendant McNamara’s false report, in December 1996, defendant Fanucci gave the plaintiff a negative performance review. The following month, January 1997, defendant Fanucci forced the plaintiff to choose one of two optionseither participate in a Performance Improvement Plan (“PIP”) or resign.
According to the plaintiff, she was informed that if she participated in the PIP, she would be subject to a second performance review within sixty days or she would be permitted to resign and take the severance package that she had been offered. The plaintiff decided not to participate in the PIP because she believed it would require her to correct deficiencies in her work that did not exist and it would require her to achieve a rating of “exceeds expectations” without any assurance of continued employment. Thus, she resigned from ADL on February 6, 1997.[2]
The plaintiff filed her complaint in the Superior Court on February 2, 2000.[3]
DISCUSSION
1. Standard Applicable to Judicial Review of a Motion to Dismiss.
Under Massachusetts law and pleading practice, a complaint is sufficient and will withstand a motion to dismiss under Mass.R.Civ.P. 12(b)(6) “unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) (quotation-omitted). See also Kirkland Construction Co. v. James, 39 Mass.App.Ct. 559, 560 (1995) (citations omitted) (“The lenient standard by which a complaint is measured on a motion to dismiss for failure to state a claim is familiar. The allegations are taken as true, doubts are resolved in favor of the complainant, and the motion must be denied unless it is certain that no set of provable facts could entitle the plaintiff to relief’).
2. The Plaintiffs Claim Is Barred by the Three-year Statute of Limitations.
Under G.L.c. 151B, §9, a plaintiff has “not later than three years after the alleged unlawful practice has occurred” to bring a civil action for damages or equitable relief. The defendant ADL maintains that the plaintiffs claims are time barred because the allegedly discriminatory act that triggered the plaintiffs cause of action occurred in December 1996, when she says a false report about her work habits was made by defendant McNamara to defendant Fanucci who, in turn, gave the plaintiff a negative performance review, or no later than January 1997, when defendant Fanucci told the plaintiff she had to participate in the PIP or resign. The plaintiffs position is that the unlawful practice in this case did not occur until she resigned on February 6, 1997.
In order to determine when the unlawful act occurred, as required by G.L.c. 151B, §9, it is necessary to identify the unlawful act. The plaintiff s claim is that she was constructively discharged.
A “(cjonstructive discharge occurs when the employer’s conduct effectively forces an employee to resign. Although the employee may say, ‘I quit,’ the employment relationship is actually severed involuntarily by the employer’s acts, against the *375 employee’s will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation."
GTE Products Corp. v. Stewart, Langford, 421 Mass. 22, 34 (1995), quoting Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1244-45 (1994). In Stewart, the Supreme Judicial Court described the nature of the proof required to establish a constructive discharge.
[I]n order for a constructive discharge to be found, the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee’s shoes would have felt compelled to resign. The test is met if, based on an objective assessment of the conditions under which the employee has asserted he was expected to work, it could be found they were so difficult as to be intolerable.
Stewart, 421 Mass. at 34 (quotations omitted).[4]
In the present case, a fair reading of the plaintiffs complaint is that in January 1997, her employer engaged in a discriminatory act by forcing her to make a choice between two alternativesshe could either submit to a performance evaluation that was unwarranted and burdensome, or accept a severance package and resign. The plaintiff does not allege any further acts of discrimination or retaliation by her employer after January 1997. While it is correct that she was not informed by her employer that she was terminated in January 1997, and that her participation in the PIP would not inevitably lead to her discharge, there was no significant action on the part of her employer relative to her resignation after January 1997.
Massachusetts courts look to federal case law construing federal anti-discrimination laws in interpreting the Massachusetts Fair Employment Practices Act. Wheatley v. American Tel. & tel. Co., 418 Mass. 394, 397 (1994). In Delaware State College v. Ricks, 449 U.S. 250 (1980), in a race-based discrimination case, the United States Supreme Court held that the statute of limitations began to run against a plaintiff, a college teacher, when he was denied tenure and not one year later when he completed his additional, terminal employment contract under a policy that afforded such tenure-denied teachers one more year of employment. According to the United States Supreme Court, it was the denial of tenure by the college and not the end of the plaintiffs employment one year later that constituted the discriminatory act. Id. at 256-58. Similarly, in Chardon v. Fernandez, 454 U.S. 6(1981), the Supreme Court relied on Ricks in holding that the discriminatory act occurred when the plaintiffs received a letter informing them that their appointments were terminated even though they were given an additional period of employment. The court reasoned that the “operative decision" that constituted the discriminatory act was made in advance of the designated date for the employee’s discharge. Id. at 8. Finally, in Lorance v. A.T.&T. Technologies, Inc., 490 U.S. 900, 912-13 (1989), the Court rejected the plaintiffs claim that the discriminatory act by his employer occurred when he suffered the effects of an altered seniority system by being demoted, but instead concluded that it had occurred at an earlier point in time when his employer adopted the system. These cases have been read by the Court of Appeals for the First Circuit as establishing “a notice rule” such that the statute of limitations begins to run when the employer’s act or conduct “has concrete, negative consequences for an employee, and the employee is aware or should have been aware of those consequences." Thomas v. Eastman Kodak Co., 183 F.3d 38, 49 (1st Cir. 1999). See also Morris v. The Government Development Bank of Puerto Rico, 11 F.3d 746, 750 (1st Cir. 1994) (“This rule of law is grounded on a solid foundation: when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose”).
In the present case, the plaintiff was on notice in January 1997 that she had to submit to a PIP and to obtain an “exceeds expectations” rating, or take the severance package and resign.[5] Thereafter, the employer is not alleged to have taken any further steps to discriminate against the plaintiff. In such a case, the “operative decision" that constitutes the discriminatory act for purposes of establishing the starting point for the running of the statute of limitations under G.L.c. 15IB, §9 is the ultimatum issued by ADL in January 1997, not the subsequent decision by the plaintiff in February to resign.
Decisions of Massachusetts courts are consistent with this approach. For example, in School Committee of Brockton v. Massachusetts Commission Against Discrimination, 423 Mass. 7, 11 & n. 8 (1996), the Supreme Judicial Court determined that the six-month statute of limitations for filing a complaint with MCAD imposed by G.L.c. 151B, §5 did not occur between 1973 and 1978 when a class of teachers were informed that the school department had conditionally denied them accrued sick leave benefits for pregnancy related disabilities, but on a later date, April 25, 1979, when the school committee communicated its final, unconditional denial of benefits. The Court reasoned that consistent with the analysis by the United States Supreme Court in the Ricks case, the teachers were not informed that the school committee had made a final decision until April 25, 1979. Id., 423 Mass. at 11. In the present case, on the other hand, ADL made its final decision, i.e., it determined that the plaintiff would be required to submit to a PIP, in January 1997.
Likewise in Lynn Teachers Union, Local 1037 v. Massachusetts Commission Against Discrimination, 406 Mass. 515 (1990), certain teachers did not formally learn about discriminatory conduct by the Lynn Teachers Union in the 1960s and 1970s in limiting the calculation of seniority rights of teachers to “consecutive years of experience" until layoffs began in the *376 1980s under proposition 2 1/2 and these certain teachers were informed that they would be laid off because they- were not given credit for years they taught school before resigning due to pregnancy. Id. at 518-19. The critical consideration that led the court to conclude that the Commission was authorized to remedy the violation many years later was not simply the continuing nature of the violation, but rather the fact that the teachers who taught before they left to have children in the 1960s and 1970s were not aware that the School Committee would not credit their earlier service until many years later. Id. The purpose of the “continuing violation” doctrine, however, “is not to excuse a plaintiff from the consequences of his or her own decision not to bring a claim within the time permitted by law.” Cuddyer v. Stop and Shop, 2000 WL 343783 *8 (Massachusetts Superior Court) (March 15, 2000) (Fabricant, J.) [11 Mass. L. Rptr. 495).
In her Reply memorandum in Opposition to the Defendant’s Motion to Dismiss at 3-4, the plaintiff seeks to distinguish the Ricks case and related Supreme Court decisions on grounds that the present case involves a “continuing violation” by the defendant ADL. See note 3 supra. Continuing violations are characterized as “serial" or “systematic.” “[T]he theory recognizes that some acts are imbricated, i.e., they involve an interlinked succession of related events or a fully-integrated course of conduct. Although the limitations clock generally starts with the commission of a discriminatory act, a true ‘continuing violation’ rewinds the clock for each discriminatory episode along the way.” Carter v. Commissioner of Corrections, 43 Mass.App.Ct. 212, 220 (1997) (quotation omitted).
In Carter, a race and gender based discrimination claim involving a continuing violation of the “serial” type, the Appeals Court held the plaintiff had alleged a series of related, discriminatory acts, and that the statute of limitations in G.L.c. 15 IB, §9 did not begin to run until the final retaliatory act committed by the employer. Carter, supra, 43 Mass.App.Ct. at 221. In the present case, however, unlike in Carter, the plaintiff has not alleged a series of related, discriminatory acts up to the time of her resignation in February 1997. Furthermore, she has not alleged that her constructive discharge was the result of a systematic violation with “roots in a discriminatory policy or practice aimed at a class of employees.” See Cuddyer v. Stop and Shop Supermarkets Co., 2000 W.L. 343783 at 7 (March 15, 2000) (Massachusetts Superior Court) (Fabricant, J.) [11 Mass. L. Rptr. 495).[6] “Systemic violations arise where longstanding and demonstrable policies of intentional discrimination negatively impact upon a class of individuals of which the plaintiff is a member. Systemic violations are not at issue in this case.” Janovich-Earle v. Integrity Intern. Sec. Services, Inc., 1999 W.L. 791954 at 4 (August 3, 1999) (Massachusetts Superior Court) (Kottmyer, J.) (Mass.Super. 1999).
ORDER
“Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.” Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64 (1975). For the above reasons, the defendant ADL’s Motion to Dismiss is ALLOWED.

 he court has allowed the plaintiff to amend her complaint and to allege that a constructive discharge occurred when she resigned on February 6, 1997. In her original complaint, the plaintiff alleged thatin January 1997, shehad been offered an opportunity to participate in the PIP or to resign, and that she elected to resign. The amendment is consistent with the plaintiffs original complaint in this case. However, it makes it conform to the plaintiffs complaint to the Massachusetts Commission Against Discrimination in July 1997, and thereby helps to clarify the nature of her claim of constructive termination. See Plaintiffs Motion to Amend the Complaint, exhibit 1. See Mass.R.Civ.P. 15(a) (court is empowered to approve an amendment at any time “when justice requires”). As it turns out, see infra this amendment does not assist the plaintiff in countering the defendant ADL’s argument in support of its motion to dismiss.

 There is no dispute that plaintiff satisfied the six month statute of limitations applicable to these cases under G.L.c. 15IB, §5 by first filing her complaint with MCAD in July 1997.

 In Stewart, the Court explained further that “A single, isolated act of an employer (or an agent of the employer) usually will not be enough to support a constructive discharge claim. Thus, evidence of a single unfavorable performance review or even of a demotion generally will not be deemed sufficient to support a claim. In order to amount to a constructive discharge, adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation will be deemed intolerable.” 421 Mass, at 34-35.

 In her Memorandum in Opposition to the Defendant’s Motion to Dismiss at 6, plaintiff seeks to distinguish the Ricks case by describing the defendant’s conduct as “continuing through the date of the Plaintiffs separation from employment with ADL on February 6, 1997.” However, there is nothing in her complaint that indicates the defendant committed a discriminatory act after January 1997, Le., just as in Ricks, supra the “operative decision” by her employer was made in advance of the date of her actual separation or termination from employment. See Fernandez, supra, 454 U.S. at 8. “The proper focus [for determining when a statute of limitations begins to run] is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.” Ricks, supra, 449 U.S. at 258.

 The allegation in the plaintiffs complaint that the defendant, ADL, “laid off about 13 administrative secretaries, all of whom were over the age of 40,” in January 1996, Plaintiffs Complaint, paragraph 8, does not establish that the plaintiffs constructive discharge was the result of a continuing violation. The plaintiff does not allege any connection between her case and the cases of these other employees, and does not allege the basis for the action by ADL with regard to these other employees. Thus, the conduct of ADL in January 1996 with regard to employees other than the plaintiff, even if true, is not itself evidence that ADL engaged in a continuing violation of the plaintiffs rights up to the date of the plaintiffs resignation in February 1997.