HARVEY R. ROCK & others[1] *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION.

Hampden.  April 6, 1981. — August 4, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, ABRAMS, & NOLAN, JJ.

*Retirement.  Massachusetts Commission Against Discrimination.  Anti-
Discrimination Law*, Early retirement plan.

An employer's offer of early retirement benefits to former employees
over fifty-five years of age but not to former employees between the
ages of forty and fifty-five did not, in the circumstances, constitute
unlawful discrimination on the basis of age under G. L. c. 151B, § 4
(1).  [201-205]

A rule of the Massachusetts Commission Against Discrimination that the
provision of G. L. c. 151B, § 5, which requires any complaint to be
filed within six months after an alleged act of discrimination "shall not
be a bar to filing in those instances where facts are alleged which in-
dicate that the unlawful conduct complained of is of a continuing
nature or allegedly has a continuing effect" was not inconsistent with
c. 151B, § 5, but merely carried out the purposes of c. 151B, and was
therefore within the commission's power to enact under c. 151B, § 3
(5).  [205-208]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 20, 1979.

The case was reported by *Smith*, J., to the Appeals Court.
The Supreme Judicial Court granted a request for direct re-
view.

*James B. Krumsiek (Bart J. Gordon* with him) for the
plaintiffs.

*Anne H. Taylor* for the defendant.

*Jerry E. Benezra & Arthur M. Marshall* for Westinghouse
Electric Corporation, intervener.

---

[1] William H. Davidson, Jr., John J. Cullinane, Jr.  See note 3, *infra*.

*Anthony P. Sager*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

ABRAMS, J.   In this age-discrimination-in-employment case the plaintiffs, three former employees of the intervener Westinghouse Electric Corporation (Westinghouse), filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), alleging that Westinghouse had engaged in an unlawful practice under G. L. c. 151B, § 4 (1), inserted by St. 1946, c. 368, § 4,[2] by offering early retirement benefits to former employees who were over fifty-five years of age in July, 1970, but not to former employees who were between the ages of forty and fifty-five in July, 1970. After a hearing, a Commissioner ordered Westinghouse to make the early retirement program available to "each member of the class."[3]   Westinghouse appealed to the full commission.   The full commission concluded that Westinghouse's offer of early retirement benefits to workers who were over age fifty-five at the time of a plant close-down was not an unlawful practice under G. L. c. 151B, § 4 (1), and dismissed the complaint.

The plaintiffs brought a complaint in Superior Court, seeking judicial review of the MCAD decision.   G. L. c. 151B, § 6.   G. L. c. 30A, § 14 (7). Westinghouse intervened as a defendant and filed an answer. A Superior Court judge reserved and reported the case without decision, and we granted the parties' joint application for direct appellate review. Mass. R. A. P. 11, as amended by 378 Mass. 924 (1979).

---

[2] General Laws c. 151B, § 4 (1), reads as follows:

"It shall be an unlawful practice:

"1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, age, or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

[3] The parties stipulated that the plaintiffs "are representative of the class of former employees in the employ of . . . Westinghouse . . . who . . . were less than fifty-five (55) and more than forty (40) years of age [at the time of the closing of Westinghouse's Springfield plant]."

G. L. c. 211A, § 10. We agree with the MCAD's conclusion that the plaintiffs' complaint should be dismissed.[4]

The parties stipulated to the following facts. For a number of years prior to 1971, Westinghouse operated a facility in East Springfield, Massachusetts. On or before November 23, 1970, Westinghouse announced its intention to close that facility. As a result, a substantial number of employees including the plaintiffs, were laid off during 1970 and 1971. The plaintiffs had been employed for varying amounts of time, ranging from fifteen to thirty-six years, and all had rights in a noncontributory pension plan. Each of the plaintiffs was at least forty, but younger than fifty-five years of age, at the time his employment was terminated due to the closing of the facility. Terminated employees who were age fifty-nine or older at the time of the close-down were entitled immediately to early retirement benefits under the company pension plan, but workers younger than fifty-nine were not eligible to receive pension benefits until age sixty-five.

The complainants were members of the International Union of Electrical, Radio and Machine Workers, AFL-CIO (union), and were covered by a collective bargaining agreement at the time their employment was terminated. In June, 1973, the union and Westinghouse entered into a new collective bargaining agreement that amended the pension plan to include a provision that an employee who had attained the age of fifty-five and was laid off as a result of a facility's closing would immediately qualify for early retirement benefits. The new agreement became effective on July 1, 1973, and did not apply to the 1971 closing of the East Springfield plant.

During the 1973 labor negotiations, Westinghouse had made a commitment to the union to "do something" for the former workers affected by the East Springfield layoffs. On

---

[4] Westinghouse raises a number of procedural grounds on which to sustain the commission's dismissal of the complaint if we find that its early retirement plan violated G. L. c. 151B, § 4 (1). Since we find no error in the commission's order of dismissal, we do not reach these issues.

August 1, 1973, Westinghouse elected to make available certain of the early retirement benefits[5] to former East Springfield employees who were at least age fifty-five at the time of the plant's closing, but not to those who were under age fifty-five at that time.

*The discrimination issue.* The critical question is whether Westinghouse's voluntary plan is an unlawful practice under G. L. c. 151B, § 4 (1). The commission found that those employees between ages forty and fifty-five did not lose a benefit to which they were entitled or for which they had some reasonable expectation. The commission found that the early retirement program placed no additional hardship (other than the hardship of the plant closedown) on the younger workers, and was consistent with its 1973 national contract. It concluded that there was no unlawful discrimination against the younger workers within the meaning of G. L. c. 151B, § 4 (1).

The commission found that there was nothing in the statute or the legislative history to suggest that the statute must be read as prohibiting Westinghouse's plan in the absence of any loss, due to age discrimination, of a benefit to which the plaintiffs were entitled. The commission determined that there is no language in the statute which suggests that all workers between the ages of forty and sixty-five must be given parity, without proof of identifiable injury, to a reasonably expected benefit. The commission found that the plaintiffs' failure to prove loss of a reasonably expected employment benefit was fatal to their case.[6] Finally, the commission concluded that its interpretation of the statute

---

[5] These benefits were: (1) early retirement pension benefits; (2) pension supplement in lieu of social security up to age sixty-two; and (3) an optional survivor benefit for death after retirement. Certain hospital, surgical and death benefits available to victims of a "close-down" under the 1973 collective bargaining agreement were not granted to the East Springfield workers.

[6] The record disclosed that Rock's pension will be paid on his attaining the appropriate age (sixty-five) under the Westinghouse retirement plan in effect when Rock was laid off.

was consistent with analogous Federal authority, and with the history and purposes of G. L. c. 151B. There is no error.

In Massachusetts, legislative concern with the problems of older workers dates back to 1934 when the Legislature authorized a special commission to study employment discrimination against older persons. Resolves 1934, c. 39; Resolves 1935, c. 33. In 1937, following two reports of the study commission (1935 House Doc. No. 1875; 1937 House Doc. No. 33), the Labor and Industries statute, G. L. c. 149, was amended, adding a definition of age discrimination in employment,[7] and declaring that dismissing or refusing to hire a person between the ages of forty-five and sixty-five on the ground of age was "against public policy" (G. L. c. 149, § 24A). The Department of Labor and Industries was granted authority to investigate complaints of discrimination and assess limited penalties.[8] General Laws c. 149, §§ 24C-24K, inserted by St. 1937, c. 367, § 2.[9] These provisions were a response to the study's findings that older workers were "being discarded for younger, more vigorous men and women," 1935 House Doc. No. 1875, at 11, and that "[t]he principal discrimination in employment on account of age [is] in the hiring of new employees." 1937 House Doc. No. 33, at 7, 8.

The penalties to the employer described in c. 367 proved to be of little benefit to the older worker, and therefore, the

---

[7] "Discrimination" is defined in G. L. c. 149, § 1, as amended through St. 1937, c. 367, § 1, as "dismissal from employment of, or refusal to employ, any person between the ages of forty-five and sixty-five because of his age."

[8] For example, the failure to keep records of ages of employees, hindering or delaying a department inspector, and discharging an employee for furnishing evidence are punishable by fine. G. L. c. 149, §§ 24D, 24E, 24F. Dismissing or refusing to hire an individual because of his age may subject an employer to the penalty of having his name published in newspapers which are circulated in the Commonwealth. G. L. c. 149, § 24G.

[9] General Laws c. 151B, § 9, provides that "nothing contained in this chapter shall be deemed to repeal sections twenty-four A to twenty-four J, inclusive, of chapter one hundred and forty-nine or any other law of the commonwealth relating to discrimination because of age."

General Court enacted St. 1950, c. 697, "An Act relative to discrimination against employees and persons seeking employment between forty-five and sixty-five years of age." See MCAD, A Study of the Employment Problems of the Older Worker (1965), at 35-36. Chapter 697 amended G. L. c. 151B, which dealt with unlawful discrimination on the basis of race, color, religious creed, national origin, or ancestry. Discrimination on the basis of age was added to the list of unlawful practices. G. L. c. 151B, § 4, as amended by St. 1950, c. 697, §§ 6-8. "Age" was defined as including "any person between the ages of forty-five and sixty-five." G. L. c. 151B, § 1 Eighth, inserted by St. 1950, c. 697, § 2.

In 1966, the statute was amended further to reduce the lower end of the protected class to age forty. St. 1966, c. 405. In proposing this amendment, Governor Volpe focused on the problems facing older workers seeking employment: "[A]ge 40 probably represents the initial entry of the factor of age discrimination into our economic life. Each additional year makes obtaining employment more difficult. Desperation and even real tragedy are often reached long before the age of 55." 1966 House Doc. No. 3677, at 2.

"When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute; otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the legislature might be defeated. And if, upon examination, the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1823). See *Commissioner of Corps. & Taxation* v. *Dalton*, 304 Mass. 147, 150 (1939).

In this case the MCAD found that the legislative history of age discrimination provisions showed a legislative concern for older workers who were injured by termination, downgrading, or a refusal to hire, based solely on age.

Therefore, the commission determined in this case that the Legislature intended that the plaintiffs prove some harm to them due to age and that in the absence of proof of such injury there is no unlawful practice. G. L. c. 151B, § 4 (1). We defer to the agency's interpretation of its governing statute. "[A]n administrative interpretation of a statute is accorded deference particularly, 'where, as here, an agency must interpret a legislative policy which is only broadly set out in the governing statute.'" *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978), quoting from *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 442 (1972). *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 169-170 (1978).

The commission's determination that this voluntary early retirement plan is not an unlawful term or condition of employment is a common sense and practical reading of the statute. The commission's requirement that the plaintiffs make some showing of injury to an expected employment benefit is well within the history, language, and spirit of G. L. c. 151B, § 4 (1), to protect older workers. We believe that the plaintiffs' reading of the statute, on the other hand, is strained and not mandated by the statute.

The commission's decision also is supported by the Federal courts' interpretation of the Federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, 631 (1976 & Supp. 1979).[10] The Federal courts have recognized that the concept of a "protected class" has a narrower application in age discrimination cases than in the race or sex discrimination context. "Because age is a relative rather than absolute status when taken as a basis for discrimination, it need not follow that all persons protected by the Act [ADEA] should be grouped together for purposes of deline-

_____

[10] The Federal statute exempts bona fide early retirement plans. See 29 U.S.C. § 623 (f) (2), as amended by Pub. L. 95-256, § 2(a), 92 Stat. 189, April 6, 1978. General Laws c. 151B contains no such exemption, and the commission left open the question whether such plans are valid under G. L. c. 151B, § 4 (I). We also do not reach that issue.

ating the extent of their protection." *Moore* v. *Sears Roebuck & Co.*, 464 F. Supp. 357, 366 (N.D. Ga. 1979) (an employer violates the ADEA by intentionally giving preference to a younger individual, even if that individual is also within the "protected class"). See *McCorstin* v. *United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980); *Marshall* v. *Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735-736 (5th Cir. 1977); *Wilson* v. *Sealtest Foods Div. of Kraftco Corp.*, 501 F.2d 84, 86 (5th Cir. 1974); *Polstorff* v. *Fletcher*, 452 F. Supp. 17 (N.D. Ala. 1978).

Further, the commission found that Westinghouse had legitimate, nondiscriminatory reasons for its action. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 136 (1976). See also *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792 (1973). The age line drawn by Westinghouse was the same as that agreed to by the union in the national contract. The record supports a conclusion that the benefits Westinghouse would receive in terms of good will with its union would more than offset the cost of its voluntary plan.[11] See *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248 (1981). We conclude that there is no error in the commission's conclusion. The record supports the commission's conclusion that the plaintiffs failed to prove that the denial of the early retirement benefits to Westinghouse's younger workers in this case is an unlawful practice prohibited by the statute.

*Commission rule on continuing violations.* Westinghouse attacks the facial validity of the commission's rule on continuing violations.[12] Westinghouse claims that the commis-

---

[11]The plaintiffs assert that Westinghouse's reason for making the offer was that it thought that the plan might assist them in other matters before the EEOC (the record indicates sex discrimination claims). The commission did not decide whether this was a legitimate nondiscriminatory reason and we do not reach or decide that issue.

The plan was suggested to Westinghouse by the mediator overseeing the negotiations between Westinghouse and the union, and was agreed to by Westinghouse after the three-year nationwide contract had been signed.

[12]At the time of the hearing, MCAD's rule 3.02 read, in pertinent part: "The complaint may be filed . . . at any time within six months of the

sion's rule "has no statutory basis" and that the rule is in conflict with the limitation expressed in G. L. c. 151B, § 5.[13] Although we find no violation of the statute in this case, the Attorney General has asked us, in the public interest, to express our view on the facial validity of the continuing violation rule. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). We briefly address that issue.

The basic authority for the commission's regulation is found in G. L. c. 151B, § 3 (5), which, in pertinent part, grants to the commission the power "[t]o adopt, promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of this chapter." The commission is also mandated to construe the provisions of this chapter "liberally for the accomplishment of the purposes thereof." G. L. c. 151B, § 9. The commission enacted its rule in 1961, and it has been in effect, albeit with some changes in the wording, since that time.[14]

The primary responsibility to determine the scope of the statute has been entrusted to the MCAD, not to the courts. A party who attacks the facial validity of a regulation bears a heavy burden. In our approach to the validity of an agency's rules and regulations, we are "as deferential" as we would be if we were considering the validity of "a legislative enactment." *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293 (1979). *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 85 (1979). "[T]he validity of a regulation promulgated [pursuant to statute] will be sustained so long as it is 'reasonably

---

alleged unlawful conduct; provided, however, that the six month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature or allegedly has a continuing effect."

In 1976, an amendment to the rule deleted the last six words. 804 Code Mass. Regs. 1.03 (2) (1978).

[13] General Laws c. 151B, § 5, reads in pertinent part: "Any complaint filed pursuant to this section must be so filed within six months after the alleged act of discrimination."

[14] There is no challenge to the procedure used in the adoption of the rule.

related to the purposes of the enabling legislation.'" *Mourning* v. *Family Publications Serv., Inc.*, 411 U.S. 356, 369 (1973), quoting from *Thorpe* v. *Housing Auth. of Durham*, 393 U.S. 268, 280-281 (1969). See *New England Medical Center, Inc.* v. *Rate Setting Comm'n, ante* 46, 52-53 (1981); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524-525 (1979); *Commonwealth* v. *Racine*, 372 Mass. 631, 639-641 (1977); *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977).

Westinghouse claims that the six-month period in G. L. c. 151B, § 5, must be computed from the employer's earliest violation, and that any other construction of the statute would be in conflict with the legislative intent. Nothing in the wording of the statute requires such a construction. The commission asserts that its rule is designed to permit it to remedy ongoing discriminatory policies by an employer, and that its rule is in accord with Federal and State rules and regulations interpreting similar legislative mandates. See, e.g., *United Airlines, Inc.* v. *Evans*, 431 U.S. 553 (1977); *Griggs* v. *Duke Power Co.*, 401 U.S. 424 (1971); *Shehadeh* v. *Chesapeake & Potomac Tel. Co.*, 595 F.2d 711, 724 (D.C. Cir. 1978); *In re Consolidated Pretrial Proceedings in the Airline Cases*, 582 F.2d 1142, 1148 (7th Cir. 1978); *Clark* v. *Olinkraft, Inc.*, 556 F.2d 1219, 1222 (5th Cir. 1977), cert. denied, 434 U.S. 1069 (1978); *Cox* v. *United States Gypsum Co.*, 409 F.2d 289, 290 (7th Cir. 1969); *Sciaraffa* v. *Oxford Paper Co.*, 310 F. Supp. 891, 897 (D. Me. 1970); *Montgomery Ward & Co.* v. *Fair Employment Practices Comm'n*, 49 Ill. App. 3d 796, 804 (1977); *Missouri Pac. R.R.* v. *Missouri Comm'n on Human Rights*, 606 S.W.2d 496, 501 (Mo. App. 1980); *Terry* v. *Mercer City Freeholders Bd.*, 173 N.J. Super. 249, 253 (1980); *Decker* v. *Board of Educ. of Elizabeth*, 153 N.J. Super. 470, 474 (1977); *Evans* v. *Western Elec. Co.*, 50 Ohio App. 2d 233, 235-236 (1976); *Devericks* v. *John Morrell & Co.*, 297 N.W.2d 325, 328 (S.D. 1980).

The commission also points to the fact that commentators have recognized the need for such a rule in employment dis-

crimination laws. See, e.g., Carty, The Continuing Violation Theory of Title VII After *United Airlines, Inc.* v. *Evans,* 31 Hastings L.J. 929 (1980); Note, Title VII and the Continuing Violation Theory: A Return to Congressional Intent, 47 Fordham L. Rev. 894 (1979); Jackson & Matheson, The Continuing Violation Theory and the Concept of Jurisdiction in Title VII Suits, 67 Geo. L.J. 811 (1979); Note, Continuing Violations of Title VII: A Suggested Approach, 63 Minn. L. Rev. 119 (1978).

We think that there is no literal or functional inconsistency between the rule and the statute, and that the rule merely carries out the scheme or design of the chapter. *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.,* 363 Mass. 474, 494 (1973). See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977). Thus, we do not believe that the rule is beyond the commission's power to enact, or that it is unrelated to the purposes of the statute. We realize that the application of the rule to particular facts may prove difficult, but that issue is not before us.[15] See, e.g., *United Air Lines, Inc.* v. *Evans, supra; Griggs* v. *Duke Power Co., supra.* See generally commentaries cited, *supra.*

The case is remanded to the Superior Court for the entry of judgment affirming the commission's order dismissing the plaintiffs' complaint.

*So ordered.*

---

[15] The commission made several alternative findings which were unnecessary to its conclusion that the plan did not violate the statute. Among those findings was one that the plan came within its continuing violation rule, and hence the plaintiffs' complaint was timely filed. We need not reach this issue since we agree with the commission that the plan is not an unlawful practice prohibited by the statute.