# United States Court of Appeals

## For the First Circuit

No. 00-1067

DOLORES GRIEL,

Plaintiff, Appellant,

v.

FRANKLIN MEDICAL CENTER AND
WILLIAM GARRAND,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Chief Judge,

Boudin and Lynch, Circuit Judges.

Mark H. Bluver with whom Susan E. Zak and Shatz, Schwartz and Fentin, P.C. were on brief for appellant.
Jay M. Presser with whom Skoler, Abbott & Presser, P.C. was on brief for appellees.

December 7, 2000

Per Curiam.  In this employment discrimination action, appellant Dolores Griel alleges that she was wrongfully terminated as a nurse in the critical care unit of appellee Franklin Medical Center.  She claims that the discharge occurred because of her status as a recovering drug addict and thereby violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Massachusetts anti-discrimination statute.[1]  Appellee pointed to evidence showing that the discharge took place after incidents in which Griel had violated protocol requirements during the care of patients.  The district court granted summary judgment, finding that no reasonable jury could disbelieve this asserted, nondiscriminatory reason.

Because the evidence is set forth in detail in the district court opinion, see Griel v. Franklin Med. Ctr., 71 F. Supp. 2d 1, 4-6 (D. Mass. 1999), we confine ourselves to a very brief description.  Griel was hired in July 1992, after she candidly acknowledged that she was a recovering drug addict who had previously been terminated for diverting narcotics in another hospital.  At the time of hiring, she was involved in a

---

[1]Americans with Disabilities Act, 42 U.S.C. §§ 12101-12117; the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Massachusetts anti-discrimination act, Mass. Gen. Laws ch. 151B.

five-year rehabilitation program to assist nurses in the situation. For several years she performed well at the hospital, but in 1995 she injured her back while lifting a patient and had to take a year away from Franklin, taking a prescribed narcotic for pain control.

On her return to Franklin in late 1996, a co-worker raised concerns about Griel's nursing, and an acting supervisor concluded that Griel's patients were receiving narcotics too readily and in excessive amounts. Griel was briefly suspended and after a new manager took charge, he agreed with the concerns and brought Griel back to work with restrictions. Thereafter, a report was made that Griel had been rummaging through discarded medication bottles and she was asked to take a drug test. After some delay, Griel took the test and the report was negative.

In March 1997, Griel returned to work without restrictions but in the course of the next two weeks there occurred two more incidents. First, Griel asked a new nurse to administer a drug drawn by Griel--a violation of protocol--and then initially denied doing so before she ultimately admitted it. Thereafter, Griel administered a dose of drugs to another patient without acquiring the required co-signature for surplus narcotics that she wasted or recording one of the doses in the

medication records or her nurse's notes.  After a disciplinary hearing, Griel was terminated as presenting an unacceptable risk to patient safety.

At the summary judgment stage, Griel relied primarily upon the presumption and burden-adjusting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Recognizing that Franklin had proffered an explanation for discharge that was on its face nondiscriminatory, she concentrated her attack on showing that the explanation was pretextual--or at least that there was enough evidence to take this issue to a jury--by showing that many others nurses had made errors in narcotics administration without being dismissed and that in specific cases other nurses were given verbal or written warnings or were required to take training to remedy mistakes.  After discussing the evidence on both sides, the district court concluded that there was "no evidence that would remotely justify a jury in concluding [that] a nurse who was not a former substance abuser, and who committed a similar pattern of similar mistakes, was not (or would not have been) terminated."  Griel, 171 F. Supp. 2d at 12.

Our review of the entry of summary judgment is de novo, and we take the inferences in the light most favorable to the nonmoving party.  See Thomas v. Eastman Kodak Co., 183 F.3d 38,

47 1st Cir. 1999), cert. denied, 120 S. Ct. 1174 (2000). Griel's main challenge in this appeal is to the district court's assessment of the evidence. Specifically, Griel points out that her own experts defended Griel's substantive decisions as to drugs administered to patients that worried hospital managers; she says that there was direct evidence of animus against her; and she says that her protocol violations were ameliorated by surrounding circumstances and by the fact that they occurred often enough with other nurses.

If the question in this case was whether Griel's medical choices were defensible, quite possibly the expert evidence she offered would have created a jury issue. But the ultimate issue in a discrimination case is whether the hospital's reason for discharging her was because it believed that she was not a safe nurse, primarily because of violations of protocol in the administration of narcotics and, in particular, on Griel's violation of the "you draw, you administer" rule. "The evidence is essentially unrebutted that violating this rule is rare and very serious [and] [a]lthough plaintiff's experts rebut the seriousness and rarity of the documentation and co-sign problems, they are conspicuously silent about Griel's violation of this rule." Griel, 71 F. Supp. 2d at 12 (footnote omitted).

Next, it is quite true that there was some evidence that the hospital was especially concerned when Griel, apparently recovered from her past affliction, began to make substantive medical decisions that managers thought indicated an excessive propensity to prescribe narcotics.  But the remarks were triggered by what the managers deemed to be over-prescription; and as the district court pointed out, there is no direct link between the remarks and any disparate treatment of Griel by the hospital.  Griel, 71 F. Supp. 2d at 13.  It was only after the incident of protocol violation that Franklin undertook to terminate Griel.

Lastly, the district court took full account of evidence indicating that other nurses were not discharged, or in some cases even disciplined, for individual mistakes.  But the district court properly pointed out that no other nurse was identified as committing a series of protocol mistakes in a rather brief period, one of which was an extremely serious violation; and while the hospital did not fire the nurse who actually administered the drugs for Griel in violation of the "you draw, you administer" rule, she was a new and inexperienced nurse who forthrightly acknowledged her mistake, while Griel "equivocated."  Griel, 71 F. Supp. 2d at 12.  And there was evidence that Franklin had terminated nurses for serious

violations of hospital rules, even though there was no exact counterpart to Griel's case.  Id.

We thus agree with the district court that Griel's evidence did not provide a reasonable jury any basis to doubt that the hospital's motive in discharging Griel was a genuine concern about her nursing practices.  Griel cites our recent decision in Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424 (1st Cir. 2000), but we see no inconsistency.  In that case, involving age discrimination, we found that the employer had given different and arguably inconsistent explanations for the termination, and that there was affirmative evidence to suggest that the principal explanation was not in fact the true reason for the termination.  See id. at 431-32.  This alone explains why Dominguez-Cruz is not in point.

The legal framework for analyzing discrimination claims has been altered since the district court's decision by Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000), and--in Massachusetts--by Abramian v. President & Fellows of Harvard College, 731 N.E.2d 1075 (Mass. 2000).  We have discussed these developments in Fite v. Digital Equipment Corp., 2000 WL 1672806 (1st Cir., Nov. 13, 2000), and mention the decisions only to say that their clarifications of federal and

-7-

Massachusetts law do not affect the disposition of the present case.

     <u>Affirmed</u>.